NOT DESIGNATED FOR PUBLICATION

No. 120,672

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VINCENT E. JEFFERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed May 1, 2020. Affirmed.

*Angela M. Davidson*, of Wyatt & Davidson, LLC, of Salina, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM:  Following an evidentiary hearing, Vincent E. Jefferson appeals from the district court's decision to deny his postsentence motion to withdraw his guilty plea to aggravated burglary. Jefferson argues that the district court erred in failing to analyze his claims under the three factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), to determine whether manifest injustice existed to support the withdrawal of his plea. Jefferson also argues that his plea was not voluntary, knowing, and intelligent. Finding no error, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May 2013, Jefferson pled guilty to a single count of aggravated burglary. In exchange, the State agreed to dismiss two additional theft charges and to recommend a departure sentence to probation. At the plea hearing, the district court accepted Jefferson's plea after finding that it was knowing, intelligent, and voluntary.

At Jefferson's sentencing hearing, the district court imposed a durational departure sentence of 60 months in prison and granted the parties' joint request for a dispositional departure to 36 months' probation.

In 2015, the district court revoked Jefferson's probation and ordered him to serve his 60-month prison sentence. After Jefferson successfully challenged his criminal history score on appeal, the district court later resentenced Jefferson to 114 months in prison. See *State v. Jefferson*, No. 110,932, 2015 WL 1782599, at *4 (Kan. App. 2015) (unpublished opinion). This court affirmed Jefferson's sentence. See *State v. Jefferson*, No. 116,268, 2017 WL 3113038, at *1-2 (Kan. App. 2017) (unpublished opinion).

In March 2018, Jefferson filed a motion to withdraw his guilty plea, alleging that his plea counsel, Rachelle Lynn, was ineffective in several respects. Specifically, Jefferson claimed that (1) Lynn pressured him to waive his preliminary hearing; (2) Lynn failed to provide him with the complaint, the affidavit of probable cause, or any discovery in his case; and (3) Lynn met with him infrequently and did not prepare for trial, discuss any defenses he might have to the charges, and only wanted to discuss plea options. Given Lynn's lack of communication and preparation, Jefferson claimed that his decision to enter the plea was not knowing, intelligent, or voluntary. Jefferson later filed a supplemental motion to withdraw his plea, raising several additional claims against Lynn and alleging that he had been promised probation in exchange for his plea.

2

The district court scheduled a hearing on the motion, where it heard testimony from Jefferson and Lynn.

*Jefferson's testimony*

Jefferson testified that after Lynn was appointed to represent him, he met with her six or seven times over an eight-month period. Jefferson said he asked Lynn to provide him with police reports or probable cause affidavits to help him understand why he had been charged with aggravated burglary instead of trespass. According to Jefferson, Lynn never provided him with this information.

Jefferson agreed that Lynn had advised him of the potential prison sentence he faced, and she had negotiated an agreement with the State on his behalf that included a recommendation for both a durational and a dispositional departure sentence to probation. Jefferson testified that he wanted to go to trial, but Lynn advised him not to and urged him to enter a plea instead. Jefferson said he did not want to plead guilty but only agreed to do so because Lynn never discussed trial strategy with him and made it clear that she was not going to take the case to trial. Jefferson alleged that Lynn coached him through the plea colloquy and told him not to say that he had been promised anything in exchange for his plea. Although not reflected in the plea hearing transcript, Jefferson claimed that he informed the district court that he had been promised probation in exchange for his plea and that he had explained in his own words what had happened on the day of the alleged crime.

Jefferson also testified that (1) he waived his right to a preliminary hearing because Lynn warned him that he could be charged with other crimes at the hearing, (2) Lynn withdrew a motion for bond reduction without his consent, and (3) Lynn advised him not to accept pretrial services.

3

*Lynn's testimony*

Lynn testified that she had handled 400 to 500 cases while working at the public defender's office, which included burglary and theft cases. Lynn recalled that during her first meeting with Jefferson, she discussed the charges against him in the complaint, reviewed the aggravated burglary statute, and explained why he had been charged with aggravated burglary. Lynn did not have any discovery materials at the time of her initial meeting with Jefferson. She did not recall if Jefferson ever requested any discovery materials, and there was no indication in the case file that he had done so. Lynn denied that she ever refused to provide Jefferson with discovery materials and stated that she would have given the materials to him if he had requested them. Lynn testified that there were multiple occasions where she and Jefferson had discussed the discovery materials and the evidence against him, which included police reports and photographs from a crime scene video. Based on Lynn's experience, she believed that the State had sufficient evidence to prove Jefferson committed the crime of aggravated burglary and that Jefferson did not have a valid defense. Due to the possibility that Jefferson would receive a significantly higher sentence if he was convicted at trial, Lynn advised him to seek a plea agreement with the State.

According to Lynn, Jefferson authorized her to enter into plea negotiations at their first meeting. Lynn said that Jefferson initially only wanted to plead guilty to theft but later agreed to accept the State's offer to plead to aggravated burglary. Lynn testified that after discussing the plea agreement with Jefferson, he decided to enter the plea and expressed no reservations about doing so. Lynn did not recall telling Jefferson how to answer the district court's questions at the plea hearing and denied that the transcript was inaccurate in the ways alleged by Jefferson. Lynn testified that although she may have expressed an opinion on whether the judge would follow the plea agreement, she never promised Jefferson that he would receive probation.

Lynn recalled that she and Jefferson were both frustrated that his crime had been charged as an aggravated burglary. Nevertheless, Jefferson never expressed any frustration with how Lynn was handling the case. Responding to Jefferson's remaining complaints, Lynn testified that she would have advised Jefferson to waive his preliminary hearing if he hoped to receive a plea offer that included no prison time. Lynn explained that she withdrew Jefferson's motion for bond because the State had extended a favorable plea offer. And Lynn stated that although she might have advised Jefferson to remain in custody rather than submit to pretrial supervision, that decision would have been his.

After hearing the testimony outlined above and argument from counsel, the district court denied Jefferson's motion to withdraw his plea. Jefferson timely appeals.

ANALYSIS

Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw a plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court, (2) the action is based on an error of law, or (3) the action is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Jefferson bears the burden of establishing an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). Additionally, this court does not reweigh evidence or assess witness credibility. We give deference to the district court's factual findings so long as those findings are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

K.S.A. 2019 Supp. 22-3210(d)(2) states: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." The Kansas Supreme Court has defined manifest injustice as

5

something that is "'obviously unfair'" or "'shocking to the conscience.'" *White v. State*, 308 Kan. 491, 496, 421 P.3d 718 (2018). When determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing, courts consider the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010); see *Edgar*, 281 Kan. at 36. The *Edgar* factors are "'benchmarks for judicial discretion,'" but "should not be relied on to the 'exclusion of other factors.'" *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011).

When the basis for the claim is ineffective assistance of counsel, a defendant must meet constitutional standards to demonstrate manifest injustice. *Bricker*, 292 Kan. at 245. In other words, a defendant must establish that counsel's performance fell below the objective standard of reasonableness and that there is a reasonable probability, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 292 Kan. at 245-46. When a defendant seeks to withdraw a plea, the defendant must show that, but for counsel's unreasonably deficient performance, the defendant would not have entered a plea and would have insisted on going to trial. *State v. Morris*, 298 Kan. 1091, 1103-04, 319 P.3d 539 (2014).

Jefferson claims (1) the district court erred in failing to analyze his claims under the three factors set forth in *Edgar* to determine whether manifest injustice existed to support the withdrawal of his plea and (2) he did not voluntarily, knowingly, and intelligently enter his plea. We address each claim in turn.

1. Edgar *factors*

Jefferson argues the district court failed to consider the second and third *Edgar* factors in denying his motion to withdraw his plea.

A district court is not required to consider all of the *Edgar* factors in ruling on a motion to withdraw a plea, so long as the court addresses all the concerns raised by the defendant. See, e.g., *State v. Williams*, 290 Kan. 1050, 1054, 236 P.3d 512 (2010) ("'All of the *Edgar* factors need not apply in a defendant's favor in every case.'"); *State v. Golston*, No. 118,471, 2019 WL 1303080, at *6 (Kan. App. 2019) (unpublished opinion) (holding that district court need not make express findings on each *Edgar* factor; implicit consideration of factors is sufficient), *rev. denied* 310 Kan. __ (December 6, 2019); *State v. Wicken*, No. 101,974, 2010 WL 1078462, at *2 (Kan. App. 2010) (unpublished opinion) (no abuse of discretion even without any mention of *Edgar* factors in transcript of motion hearing or in district court's journal entry denying defendant's motion to withdraw his plea).

The record here reflects that the district court considered all three *Edgar* factors and found them met. In denying Jefferson's motion to withdraw his plea, the district court first cited to K.S.A. 22-3210 and defined the manifest injustice standard. The court then referenced the *Edgar* factors and noted that the first factor—whether the defendant was represented by competent counsel—was not disputed, stating that "in this case there's no issues there in terms of Ms. Lynn's experience, her training, very experienced criminal defense attorney." With respect to the second and third *Edgar* factors—whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and whether the plea was fairly and understandingly made—the district court found that Lynn's representation was effective, that Lynn was a more credible witness than Jefferson, and that "we don't have the *Edgar* factors proven in this case." The judge further stated:

". . . I'm convinced it's obvious they met . . . numerous times, Ms. Lynn reached a very favorable plea agreement for probation in what was supposed to be a presumptive prison case, discussed the facts in detail, she even has specific memory about being frustrated personally, herself, with this particular statute that elevated things in these unique circumstances to a felony.

"The one thing I want to point out, there seems to be a claim that, you know, hey, Ms. Lynn was ineffective in that I got charged with a felony. Well, the defense never controls the charge. The agency that solely controls charging is the district attorney's office, they are the ones that pick the charge. . . . So that's a non-issue.

"The bond motion, again, there was one filed, but Ms. Lynn explained she withdrew that due to the fact that they reached a plea agreement and a plea agreement was entered for probation. The discovery, Ms. Lynn indicated that if requested, she would have provided it. But the more important thing here, and [the prosecutor] points on this, the important thing is not giving somebody discovery, because it takes a lawyer to analyze facts and analyze them in light of the law, and just being given a bunch of facts, a bunch of information, the discovery, the critical thing is interpreting those items, how are they important, how are they not important. And Ms. Lynn indicated she discussed the discovery, the evidence with Mr. Jefferson at length. That's the critical thing, because that's where the legal assistance comes into play, analyzing those facts in comparison with what the law is and what they show or don't show. So I have no concerns there.

"When I stand back and look at this, it certainly does not—I mean, this just looks like an attorney that did a great job, got an individual out of a presumptive prison situation border box."

The district court also rejected Jefferson's claims of irregularity with the transcript, finding they contradicted the court reporter's sworn oath as to the transcript's accuracy as well as the court's own recollection of events. And the court noted its practice of stopping proceedings when a defendant claims he or she was promised something in exchange for a plea. In conclusion, the judge stated,

". . . [W]hen I stand back and look at this, there is nothing that even remotely rises to cause me to think this is a manifest injustice that warrants the withdrawal of the plea. Nothing, you know, obviously unfair, shocking of the conscience.

"The reason, I am convinced, we are here, that Mr. Jefferson has filed these, is the fact that he violated his probation and his probation was revoked, he's in prison and doesn't want to be in prison. That I am convinced that is why we're here. And there's no basis to these motions. I'll deny the motion to set aside the plea."

In addressing each of the issues raised in his motion and testimony, the district court expressly found that Jefferson had failed to establish manifest injustice under any of the *Edgar* factors. Accordingly, Jefferson's claim of error on this point necessarily fails.

2. *Voluntary, knowing, and intelligent plea*

Jefferson asserts the district abused its discretion in finding that his plea was voluntary, knowing, and intelligent, given his testimony that Lynn failed to provide him with any discovery materials or explain the charges to him.

Contrary to Jefferson's argument, the record reflects that Jefferson's plea was voluntary, knowing, and intelligent. Before entering his plea, Jefferson reviewed and signed an acknowledgment of rights and entry of plea. The acknowledgment of rights and entry of plea contained the details of the plea agreement, its potential effect, and the constitutional protections a defendant relinquishes when entering a plea. Paragraph 3 of the acknowledgment of rights and entry of plea stated that Jefferson had received a copy of the complaint, had read and discussed the complaint with his counsel, had discussed with counsel the nature of each charge and possible defenses, and fully understood each charge against him.

At the plea hearing, Jefferson agreed that he had read and understood the acknowledgment of rights and entry of plea and the plea agreement, and that he had signed the documents after discussing them with counsel. Jefferson said that he had no questions about the documents and that he wanted to accept the plea offer and enter a guilty plea. The district court fully explained to Jefferson the consequences of his plea

9

and Jefferson conveyed his desire to enter the plea despite the consequences. Jefferson denied that he had been forced or threatened to enter a plea or that he had been promised anything in exchange for his plea. Jefferson expressed satisfaction with his counsel's representation.

Jefferson's claim that his plea was not voluntary, knowing, or intelligent due to Lynn's failure to provide him with discovery materials or explain the charges to him is essentially an invitation to reweigh the evidence and find his testimony more credible than that of Lynn, which we cannot do. See *Anderson*, 291 Kan. at 855 (appellate court does not reweigh evidence or assess witness credibility). We do not review credibility determinations because the district court is in the unique position of evaluating the witness' demeanor in court. We note the same judge presided over Jefferson's plea hearing and the motion to withdraw his plea hearing. The judge had an opportunity to question Jefferson and observe his demeanor at the plea hearing. And the judge specifically found Lynn's testimony at the motion to withdraw plea hearing more credible than that of Jefferson, noting that Jefferson received a favorable plea bargain and did not raise any issues with his plea until after the district court revoked his probation and imposed a longer prison sentence upon resentencing. The district court made a credibility determination that we will not now disturb.

CONCLUSION

Jefferson has not established manifest injustice that requires his plea to be set aside. The district court expressly found that Jefferson failed to establish that he was entitled to relief under any of the *Edgar* factors. And the district court's finding that Jefferson's plea was voluntary, knowing, and intelligent is supported by substantial competent evidence. The district court did not abuse its discretion in denying Jefferson's motion to withdraw his plea.

Affirmed.